Christopher M. Goodman (AZ #023231)
LAW OFFICE OF CHRISTOPHER GOODMAN PLC
45 W. Jefferson St., Suite 512
Phoenix, AZ 85003
(602) 253-1000
chris@goodmanlegal.com
*Attorney for Plaintiffs/Appellants*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| In Re Kenneth Alan Conner, Debtor. _____ | No. CV-19-01076-DWL<br><br>BK 2:14-bk-14280-SHG<br>Adv. No. 2:14-ap-00823-SHG |
| Kenneth Conner and Deanna Conner, Plaintiffs,<br><br>vs.<br><br>Nationstar Mortgage LLC; Mortgage Electronic Registration Systems, Inc.; Wilmington Trust, National Association, as Successor Trustee to Citibank N.A., trustee to Structured Assert Securities Corporation Mortgage Pass-Through Certificates Series 2005-10; Corporate John Does X, Y and Z; and Individual John Does A, B, and C,  Defendants | **OPENING BRIEF**<br><br>**(Oral Argument Requested)** |

Law Office of Christopher Goodman PLC
45 W. Jefferson St., Suite 512
Phoenix, AZ 85003
(602) 253-1000

# TABLE OF CONTENTS

I.      Issues Presented…..………………………………………………………1

II.     Applicable Standards of Review………………………………………….1

III.    Factual Background……………………………………………………….2

        a.  Procedural History……..…………………………………………….3

        b.  Factual History………………………..…………………………….3

IV.     Summary of Argument …………………………………………………11

V.      Argument……………………………………………………...……12

        a.  Plaintiffs' Settlement with Nationstar and MERS did not also Release Non-Party Defendants Wilmington Trust and SASCO Trust…………………..12

        b.  The bankruptcy court erred in failing to consider the motion to amend and the FAC……………………………………………………...……13

VI.     Conclusion………………….…………………………………………17

## TABLE OF AUTHORITIES

**STATUTES**

28 U.S.C. §1334(b).  (Page 1)

28 U.S.C. § 158(a).  (Page 1)

**CASES**

*AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631 (9th Cir. 2012). (Pages 2, 16)

*Ansley v. Banner Health Network*, 246 Ariz. 240, 437 P.3d 899 (App. 2019). (Page 15)

*BMW of N. Am., LLC v. Mini Works, LLC*, 166 F. Supp. 3d 976 (D. Ariz. 2010).  (Pages 12, 13)

*Branch Banking & Tr. Co. v. D.M.S.I., LLC*, 871 F.3d 751 (9th Cir. 2017). (Page 2)

*Callie v. Near*, 829 F.2d 888 (9th Cir. 1987). (Page 12)

*Cumis Ins. Soc., Inc. v. Merrick Bank Corp.*, 680 F. Supp. 2d 1077 (D. Ariz. 2010).  (Page 13)

*Dansby v. Buck,* 92 Ariz. 1, 373 P.2d 1 (Ariz.1962). (Page 13)

*Dougherty v. City of Covina*, 654 F.3d 892 (9th Cir. 2011). (Page 2)

*ELM Retirement Ctr., LP v. Callaway*, 226 Ariz. 28 (App. 2010).  (Pages 2, 13)

*Gilligan v. Jamco Development Corp.*, 108 F.3d 246 (9th Cir.1997). (Page 2)

*Jewel v. Nat'l Sec. Agency*, 673 F.3d 902 (9th Cir. 2011). (Pages 2, 16)

*Kahle v. Gonzales*, 487 F.3d 697 (9th Cir. 2007). (Page 2)

*Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005). (Page 2)

*Matsuura v. Alston & Bird*, 166 F.3d 1006 (9th Cir. 1999). (Page 15)

*Mull for Mull v. Motion Picture Indus. Health Plan*, 865 F.3d 1207 (9th Cir. 2017). (Page 2)

*Plumeau v. School Dist. No. 40*, 130 F.3d 432 (9th Cir. 1997).  (Pages 2, 16)

*Shwarz v. United States*, 234 F.3d 428 (9th Cir. 2000).  (Page 2)

*Smith v. Pacific Props. & Dev. Corp.,* 358 F.3d 1097 (9th Cir. 2004).   (Page 2)

*Yamaguchi v. U.S. Dep't of the Air Force*, 109 F.3d 1475 (9th Cir. 1997).  (Page 2)

*Zubia v. Shapiro*, 243 Ariz. 412, 408 P.3d 1248 (2018). (Pages 16, 17)

Debtors/Adversary Plaintiffs/Appellants Kenneth and Deanna Conner (the "Conners") submit their Opening Brief pursuant to Rule 8001 *et seq.* of the Federal Rules of Bankruptcy Procedure and the District of Arizona Local Rules.

This appeal is taken from the Bankruptcy Court's February 1, 2019 Order dismissing the Conners' adversary proceeding on two grounds, and without considering the Motion to Amend the Complaint and FAC prior to its ruling.   [Dkt. 175.] This order was final and appealable. Id.   The Bankruptcy Court had subject matter jurisdiction over this adversary proceeding under 28 U.S.C. §1334(b).   The notice of appeal was timely filed on February 14, 2019.   The District Court has appellate jurisdiction pursuant to the Conners' notice of appeal. 28 U.S.C. § 158(a).

## I.   ISSUES PRESENTED

There are **three issues** presented in this appeal:

First, the primary and over-arching issue is whether the 2016 settlement agreement between Plaintiffs, MERS, and Nationstar applies to bar claims against non-party Wilmington Trust as an assignee or successor in interest to MERS and Nationstar.

Second, if the settlement agreement did not bar all claims, whether the trial court erred in refusing to consider the pending Motion to Amend, particularly in light of the evidence placed before the Court regarding newly-discovered facts.

Third, assuming the Court finds the settlement agreement does not bar all claims, but will not remand to consider the Fourth Amended Complaint (hereinafter FAC), whether the trial court erred in dismissing claims as stated in the Third Amended Complaint (hereinafter TAC) on the substantive bases explained in the January 19, 2019 transcript.

The **specific relief** the Conners seek is a reversal of the bankruptcy court's ruling that the 2016 settlement agreement bars claims against Wilmington Trust and a remand with direction to consider the motion to amend and the sufficiency of the FAC.

## II.   APPLICABLE STANDARDS OF REVIEW

Law Office of Christopher Goodman PLC
45 W. Jefferson St., Suite 512
Phoenix, AZ 85003
(602) 253-1000

1

Law Office of Christopher Goodman PLC
45 W. Jefferson St., Suite 512
Phoenix, AZ 85003
(602) 253-1000

There are several rulings being reviewed here. First is the ruling on the 2016 settlement agreement, predating Wilmington Trust's involvement in this case yet somehow precluding claims against it. The ruling was tantamount to one for summary judgment on the terms of a contract. A district court's decision to grant, partially grant, or deny summary judgment or a summary adjudication motion is reviewed *de novo*. *See, e.g., Branch Banking & Tr. Co. v. D.M.S.I., LLC*, 871 F.3d 751, 759 (9th Cir. 2017); *Mull for Mull v. Motion Picture Indus. Health Plan*, 865 F.3d 1207, 1209 (9th Cir. 2017).

The second ruling is one dismissing the TAC for failing to state a claim. The court reviews *de novo* dismissals based on failure to state a claim pursuant to Rule 12(b)(6). *See Dougherty v. City of Covina*, 654 F.3d 892, 897 (9th Cir. 2011); *Kahle v. Gonzales*, 487 F.3d 697, 699 (9th Cir. 2007); *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). In reviewing such motions, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). As the Ninth Circuit has described, a "motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir.1997). "An inquiry into the adequacy of the evidence is improper when deciding whether to dismiss for failure to state a claim." *Yamaguchi v. U.S. Dep't of the Air Force*, 109 F.3d 1475, 1481 (9th Cir. 1997).

The third ruling is the denial of leave to amend to consider the FAC and the newly discovered facts asserted therein. A dismissal without leave to amend is reviewed *de novo*. *See Smith v. Pacific Props. & Dev. Corp.,* 358 F.3d 1097, 1100 (9th Cir. 2004). Further, dismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment. *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012); *Jewel v. Nat'l Sec. Agency*, 673 F.3d 902, 903 n.3 (9th Cir. 2011). Such a denial is "strictly" reviewed in light of the strong policy permitting amendment. *See Plumeau v. School Dist. No. 40*, 130 F.3d 432, 439 (9th Cir. 1997).

## II.    FACTUAL BACKGROUND

Law Office of Christopher Goodman PLC
45 W. Jefferson St., Suite 512
Phoenix, AZ 85003
(602) 253-1000

### a. **Procedural History**

This appeal is taken from the bankruptcy court's February 1, 2019 Order dismissing this adversary proceeding. [Dkt. 176.] The bankruptcy court's order was based upon Defendant/Appellant Wilmington Trust's Motion to Enforce Settlement Agreement/Motion to Dismiss TAC. [Dkt. 129 & 130.] The motion was granted on two grounds stated on the record at the hearing: first, that a 2016 settlement agreement between the Conners, Mortgage Electronic Registration Systems (MERS) and Nationstar Mortgage (Nationstar Mortgage), to which Wilmington Trust was not a party [January 16, 2019 Transcript at 60:13-62:8]; and second, that the TAC [Dkt. 96] did not state a claim upon which relief may be granted [January 16, 2019 Transcript at 62:9 to 66:22]. The bankruptcy court further denied the Conners' pending Motion to Amend [Dkt. 165] and FAC with newly-discovered factual allegations [Dkt. 164], but did not reach the question of whether amendment would be futile [January 16, 2109 Transcript at 67:4-8], reasoning that because it had ruled the 2016 settlement barred all claims, there was no need to reach that question. Id.

### b. **Factual History.**

This is an adversary proceeding originally brought by the Conners (with the assistance of Arizona State University's Homeowner Assistance Project) against Wilmington Trust, Mortgage Electronic Registration Systems (MERS), and Nationstar Mortgage. [Dkt. 1, Complaint.] The factual and procedural history of this action is complicated to say the least, and are set forth more fully in the TAC [Dkt. 96] and FAC [Dkt. 164], but pursuant to the Rules the Conners will attempt to summarize the pertinent and determinative facts here.

Deanna and Kenneth Conner are a couple who are longtime Arizona residents; as of this filing they are 74 and 70 years old, respectively. [Dkt. 96 at ¶ 8.] The Conners lived in a home property located at 14385 N. 99th Street, Scottsdale, Arizona 85260 ("the Property") for at least two decades, up to and including during the pendency of this action. [Dkt. 164 at ¶ 12.] Structured Asset Securities Corporation Mortgage Pass-Through Certificates

Law Office of Christopher Goodman PLC
45 W. Jefferson St., Suite 512
Phoenix, AZ 85003
(602) 253-1000

Series 2005-10 ("SASCO Trust") is the Trust that purportedly owned the Note and Deed of Trust on the Property as part of the securitization of the mortgage.  [Dkt. 96 at ⁋ 10.] Appellee Wilmington Trust acted as Trustee of the SASCO Trust during the foreclosure of the Property.  [Dkt. 96 at ⁋ 10.]  Former Defendant Mortgage Electronic Registration Systems, Inc. ("MERS"), was named on the Plaintiffs' 2005 Deed of Trust as nominee/ beneficiary for the lender, First Magnus Financial Corporation.  [Dkt. 164 at ⁋ 6.]  Former Defendant Nationstar Mortgage LLC ("Nationstar") is the entity to which MERS assigned the 2005 Deed of Trust.  [Dkt. 164 at ⁋ 7; Dkt. 96 at ⁋⁋ 12/22.]

The Conners' loan was originated on October 26, 2005.  [Dkt. 96 at ⁋⁋ 20 & 24.] The lender was First Magnus. Id.  The loan was modified Aurora Loan Services, LLC, by a "Loan Modification Agreement" on or about January 22, 2010.  [Dkt. 96 at ⁋ 25.]  Aurora recorded a document indicating that they were lender when that information was false, Aurora was simply the servicer. [Dkt. 96 at ⁋ 26.]   On August 16, 2011, the loan was modified again by Aurora Loan Services, LLC, by a "Home Affordable Modification Agreement" recorded with the Maricopa County Recorder's Office, Maricopa County, Arizona.  [Dkt. 96 at ⁋⁋ 27 & 28.]

On or about August 31, 2012, the Conners' loan and Deed of Trust was allegedly assigned to Nationstar Mortgage, LLC ("Nationstar").  [Dkt. 96 at ⁋ 29.]  A document was recorded purporting to assign the Deed of Trust from MERS to Nationstar.  Id.   This document states that MERS, as nominee for First Magnus Financial Corporation, conveys and assigns the described Deed of Trust and all interest secured thereby to Nationstar.  Id.

After that 2012 assignment by MERS to Nationstar, the Conners made several applications for loan modifications with Nationstar. [Dkt. 96 at ⁋⁋ 31-37.]    Mr. Conner made a complete modification application on or about June 25, 2013 but was rejected on or about September 24, 2013.  [Dkt. 96 at ⁋ 36.]  Mr. Conner again applied for a loan modification with Nationstar in October 2013.  [Dkt. 96 at ⁋ 37.]  Despite Mr. Conner's efforts, on December 18, 2013, Nationstar recorded a Notice of Trustee Sale for the

Law Office of Christopher Goodman PLC
45 W. Jefferson St., Suite 512
Phoenix, AZ 85003
(602) 253-1000

Property, scheduled for March 24, 2014. [Dkt. 96 at ¶ 38.]  The Conners admit they were notified of this March 24 trustee sale. [Dkt. 96 at ¶ 39.]

Mr. Conner's modification application was denied on or about February 8, 2014. [Dkt. 96 at ¶ 40.]  Mr. Conner was verbally informed by Nationstar that the trustee sale scheduled for March 24, 2014 would be postponed until June 2, 2014. [Dkt. 96 at ¶ 41.] On April 8, 2014, Mr. Conner sent a fax to Nationstar with another request for loan modification.  [Dkt. 96 at ¶ 43.]  On or about April 23, 2014, Mr. Conner received a letter from Nationstar stating he was delinquent on his loan; this letter provided a reinstatement amount of $27,493.63, but it did not provide a date by which the delinquency had to be cured. [Dkt. 96 at ¶ 44.]   Upon receiving the delinquency letter, Mr. Conner called Nationstar; at this time, he learned that his most recent loan modification had been denied. [Dkt. 96 at ¶ 45.] He was also told that the June 2 foreclosure sale was placed on hold and that he would be sent a new sale date via mail.  Id.  He was not given a new date for the foreclosure sale.  Id.

On May 30, 2014, without notice to the Conners, Nationstar assigned the Conners' Deed of Trust to Wilmington Trust, National Association, as successor trustee to Citibank, N.A. as trustee to the SASCO Trust.  [Dkt. 96 at ¶ 49.] This assignment was purportedly necessary because the Conners' mortgage had been securitized into the SASCO Trust in 2005, and SASCO Trust was purportedly the true owner of the Note and the beneficial interest holder of the 2005 Deed of Trust.  [Dkt. 164 at ¶ 52.]

The sale was conducted on June 2, 2014 without the Conners' knowledge, and even though Nationstar had promised them that the sale was on hold and that a new date would be set.  [Dkt. 96 at ¶ 57.]  At the trustee's sale, Wilmington Trust placed a credit bid and purchased the Property, with a deed naming Wilmington Trust as owner due to its position as trustee of SASCO Trust.  [Dkt. 96 at ¶ 58.] But as the Conners discovered in 2018, four years after the trustee's sale and well after the TAC was filed, the SASCO Trust never owned the mortgage, and Wilmington Trust did not have the authority to make a credit bid at the foreclosure sale.  [Dkt. 164 at ¶¶ 74, 82-83, 88-89.]

Law Office of Christopher Goodman PLC
45 W. Jefferson St., Suite 512
Phoenix, AZ 85003
(602) 253-1000

On or about June 20, 2014, the Conners were hand-delivered a letter notifying them of the trustee sale that occurred June 2, 2014, and demanding possession of the property; this letter was the first time the Conners learned that the trustee sale occurred on June 2, 2014. [Dkt. 96 at ⁋ 63.]   On or about August 7, 2014, Wilmington Trust conveyed the property to third-party CSK Investments, LLC.  [Dkt. 96 at ⁋ 64.]  The Conners thereafter received notice of an eviction hearing.  [Dkt. 96 at ⁋ 65.]

The Conners filed bankruptcy on September 17, 2014.  In re Conner, **2:14-bk-14280-SHG** (Ariz. Bankr.).  The Conners filed this adversary proceeding on September 30, 2014 against Nationstar, Wilmington Trust, and the buyer CSK Investments. [Dkt. 1.]  Through to 2018, and three amended complaints, the gravamen of this adversary proceeding had been that the documents recorded by MERS, Nationstar, and Wilmington Trust were inaccurate and invalid, and that neither Nationstar nor Wilmington Trust had the legal right to foreclose on the Property.  [Dkt. 1, 11, 44 & 96.]   At all times relevant during this adversary proceeding, the Conners were proceeding based on the assumption that the SASCO Trust indeed was the proper original 2005 owner of the Note and beneficiary of the Deed of Trust, an assumption that neither MERS, Nationstar, Wilmington Trust, or the SASCO Trust ever addressed, much less corrected.  [Dkt. 164 at ⁋ 74.]   The Conners had at all times been confounded by the apparent disconnect between their efforts to refinance the mortgage and their communications with Nationstar regarding the postponement of the sale with Wilmington Trust going forward with the sale.

In 2016, during the pendency of this adversary proceeding, the Conners reached a settlement agreement with MERS and Nationstar.[1]  [Dkt. 130, Exhibit A.]  The Notice of

---

[1] The 2016 settlement agreement was not made a part of the Record in full.  It is quoted extensively in Wilmington Trust's Motion to Enforce [Dkt. 129] and presented in redacted form in the accompanying Declaration [Dkt. 130, Exhibit A.], as well as quoted the Response [Dkt. 137] and Reply [Dkt. 144.]   Pursuant to Section 10, the settlement agreement is confidential, except that "each Party may make disclosure of the Confidential Terms on a need-to-know basis, to his or its own attorneys, employees, accountants, advisors or consultants, to comply with the demand of a governmental agency, in the enforcement of this Agreement, and/or as ordered by a court or other tribunal with competent jurisdiction."  Wilmington Trust's redactions at Dkt. 130, Exhibit A will not inhibit the Court's ability to consider this appeal.

Law Office of Christopher Goodman PLC
45 W. Jefferson St., Suite 512
Phoenix, AZ 85003
(602) 253-1000

Settlement filed with the bankruptcy court mentioned only a settlement with MERS and Nationstar. Id. It made no mention of Wilmington Trust. Id. The Stipulation to Dismiss based on the settlement mentioned only MERS and Nationstar, and did not mention then-party Wilmington Trust. [Dkt. 73.] Accompanying Wilmington Trust's motion to enforce the settlement agreement, counsel for Wilmington Trust—who was also counsel for MERS and Nationstar—acknowledged that the Conners' then-counsel had requested a carve-out for the Conners to pursue claims against Wilmington Trust. [Dkt. 130, at ¶ 4.] Wilmington Trust, therefore, was aware at the time of the 2016 settlement that the Conners intended to continue to pursue claims despite the settlement with MERS and Nationstar.

The 2016 settlement agreement states that the "parties" thereto are the Conners, MERS, and Nationstar, with no reference to Wilmington Trust. [Dkt. 130, Exhibit A, at p. 1.] Section 5 of the 2016 settlement with MERS and Nationstar contained releases of MERS and Nationstar:

(a) The Debtors' Release of Nationstar. Upon full and final payment of the Settlement Amount and Refund Amount, the Debtors and each and all of his current, former and future partners, affiliates, predecessors, successors, assigns, attorneys, employees, representatives and agents (the "Debtors Releasing Parties") release and forever discharge Nationstar and each and all of its current, former and future parents, divisions, subsidiaries, affiliates, predecessors, successors, assigns, officers, directors, attorneys, shareholders, employees, representatives and agents (the "Nationstar Released Parties"), from any and all claims, charges, complaints, liabilities, obligations, promises, agreements, damages, causes of action, suits, rights, demands, costs, losses, debts and expenses (including attorneys' fees) of any nature whatsoever, whether in law or equity, which the Debtor Releasing Parties now have or may have had against the Nationstar Released Parties related to the Complaint and Dispute (the "Released Matters").

(b) The Debtors' Release of MERS. Upon full and final payment of the Settlement Amount and Refund Amount, the Debtors and each and all of his current, former and future partners, affiliates, predecessors, successors, assigns, attorneys, employees, representatives and agents (the "Debtors Releasing Parties") release and forever discharge MERS and each and all of its current, former and future parents, divisions, subsidiaries, affiliates, predecessors, successors, assigns, officers, directors, attorneys, shareholders, employees, representatives and agents (the "MERS Released Parties"), from any and all claims, charges, complaints, liabilities, obligations, promises, agreements, damages, causes of action, suits, rights, demands, costs, losses, debts and expenses (including attorneys' fees) of any nature

whatsoever, whether in law or equity, which the Debtor Releasing Parties now have or may have had against the MERS Released Parties related to the Complaint and Dispute (the "Released Matters").

[Dkt. 130, Exhibit A, at p. 2.]    Pursuant to stipulation, the bankruptcy court subsequently dismissed the adversary proceeding against MERS and Nationstar.[2]  [Dkt. 77 & 78.]

The Conners then filed the TAC against Wilmington Trust. [Dkt. 96.]  The TAC made claims based upon A.R.S. § 33-420, Arizona's false recording statute, alleging that because MERS and Nationstar lacked authority to make assignments, Wilmington Trust was not the proper assignee. [Dkt. 96 at p. 16.]  The TAC further alleged that Wilmington Trust had been unjustly enriched because it conducted an invalid trustee's sale, then sold the Property for a $374,878.90 gain to CSK Investments.  [Dkt. 96 at p. 17.]  The Conners alleged conversion based upon their false eviction and rushed move from the Property causing the loss or damage to personal property.  [Dkt. 96 at 18.]  Finally, the Conners alleged that Wilmington Trust had violating 15 U.S.C.A. § 1641(g) by failing to make disclosures to the Conners regarding the assignment or transfer of the loan.

Wilmington Trust moved to enforce the 2016 settlement agreement to bar the claims in the TAC, and alternatively moved to dismiss the claims in the TAC.  [Dkt. 129.]  In the meantime, and in an effort to prove their claims, the Conners retained Marie McDonnell, a foreclosure forensics expert, to assist in proving their claims that Wilmington Trust had wrongfully recorded documents and never held the beneficial interest in the Property nor had the right to foreclose. [Dkt. 136.] Ms. McDonnell issued her findings after Wilmington Trust's motion, which the Conners then filed as part of their Response to Wilmington Trust's motion.  [Dkt. 136 & 137.]

Ms. McDonnell's investigation determined not only that the Defendants had recorded a series of false documents, but that the SASCO Trust never owned the Note or Deed of Trust, and the true owner (with the power of foreclosure) was the Lehman XS Trust. [Dkt. 136 at ¶¶ 7-8.] She showed that Nationstar, the SASCO Trust and Wilmington

---

[2] The bankruptcy court originally dismissed the adversary proceeding as a whole [Dkt. 77] but upon realizing there were defendants with whom a settlement had not been reached nor had been stipulated for dismissal—Wilmington Trust—the bankruptcy court reopened the proceeding *sua sponte* and without issuing a written order [Dkt. 78.].

Law Office of Christopher Goodman PLC
45 W. Jefferson St., Suite 512
Phoenix, AZ 85003
(602) 253-1000

Law Office of Christopher Goodman PLC
45 W. Jefferson St., Suite 512
Phoenix, AZ 85003
(602) 253-1000

Trust as trustee never had the power to foreclose on the Property because they never owned the Note and Deed of Trust. In essence, Wilmington Trust had foreclosed upon the Conners' home, owned it, and sold it to a third party acting on behalf of the SASCO Trust, despite the SASCO Trust not being the mortgage-backed securities trust that owned the Conners' mortgage.   [Dkt. 136 at ❡❡ 7 & 8.] Ms. McDonnell's methods are laid out more fully in her report, but the essence is that SASCO Trust never owned the mortgage. The foreclosure was <u>never</u> valid.

The manner by which Ms. McDonnell discovered that the Plaintiffs' mortgage was never held by the SASCO Trust is detailed in the affidavit and exhibits, but to provide a succinct summary:

> In a nutshell, I discovered that the Conners' Note, Deed of Trust, and ancillary documents ("Mortgage Loan") were never acquired by Wilmington Trust, National Association, as Successor Trustee to CitiBank, N.A. as Trustee to Structured Asset Securities Corporation Mortgage Pass Through Certificates, Series 2005-10. (❡ 7.)

> My investigation revealed that the Conners' Mortgage Loan was transferred, assigned, set over, deposited with and otherwise conveyed to CitiBank, N.A., as Trustee for the Lehman XS Trust, Series 2005-10 on December 30, 2005. (❡ 8.)

> I concluded that the Conners' Mortgage Loan was not securitized into the Structured Asset Securities Corporation Trust 2005-10. In addition to my empirical analysis, this makes common sense because the Conners' Mortgage Loan was not in existence when the SASCO Trust closed on May 31, 2005. The Conners consummated the transaction with First Magnus Financial Corporation on October 26, 2005, five (5) months later. (❡ 74.)

**It is an impossibility for Plaintiffs' mortgage to ever have been held by the SASCO Trust**. Yet the SASCO Trust, using Wilmington Trust as its agent, foreclosed on the Conners' home, acquired title through a credit bid, sold the home to a third-party, took those proceeds, and forced the Conners out on the street. Ms. McDonnell also concluded that the Conners as laypeople could never have found this discrepancy, but that Wilmington Trust—

and likely MERS and Nationstar—very likely knew about this issue since the outset of this litigation, but never disclosed it. [Dkt. 164 at ₽ 10.]

While Wilmington Trust's Motion to Enforce/Motion to Dismiss TAC was awaiting hearing on January 16, 2019, the Conners filed a Fourth Amended Complaint (hereinafter FAC) based upon Ms. McDonnell's findings as well as a motion to amend. [Dkt. 164 & 165.] This FAC made five claims: false recording (because all documents recorded referring to SASCO Trust were false); fraud; conversion; unjust enrichment; and wrongful foreclosure. [Dkt. 164.]

Hearing on Wilmington Trust's Motion to Enforce the Settlement Agreement/Motion to Dismiss TAC was held at 2:00 on January 16, 2019. [1/16/19 Transcript.] The bankruptcy court first held that the 2016 settlement agreement's release barred all claims against Wilmington Trust, reasoning that because Nationstar assigned the Deed of Trust to Wilmington Trust four days before the 2014 trustee's sale, Wilmington Trust was an "assignee" as considered by the 2016 settlement:

> So with regard to the settlement, the Court has inherent authority under federal law to enforce the settlement agreement in an action pending before it. That's Callie, C-A-L-L-I-E, v. Near, N-E-A-R, 829 F.2d 888 at 890, a Ninth Circuit 1987 decision. But specific language at issue in the settlement agreement is, quote,
>
> "Each and all of Nationstar's and MERS' current, former, and future affiliates, predecessors, successors, and assigns, the release parties from any and all claims, charges, complaints, liabilities, obligations, promises, agreements, damages, causes of actions, suits, rights, demands, costs, losses, debtors, or expenses, including attorneys' fees of any nature whatsoever, whether in law or equity, which Plaintiffs have now or may have had against the release parties related to the complaint and the dispute."
>
> Under paragraph 5 of the settlement, The Plaintiffs release Nationstar and MERS, as well as their successors and assigns, with regard to the complaint and the dispute. And under recital D, incorporated at paragraph 1, "the complaint," that's quote, end quote, involved the adversary complaint 1, the amended complaint 11, that's DE-1 and DE-11, and the second amended complaint at DE-44.
>
> And the quote, "dispute," end quote, involved claims at various documents executed by MERS and Nationstar were invalid or void, including the deed of trust, quote, "as

Law Office of Christopher Goodman PLC
45 W. Jefferson St., Suite 512
Phoenix, AZ 85003
(602) 253-1000

10

well as all assignments and other recorded documents executed by including -- executed by parties, including MERS and Nationstar," end quote, period. End quote. The, quote, "dispute," end quote, also includes claims that Nationstar engaged in a variety of fraudulent or otherwise improper conduct regarding the debt and the trustee's sale. Nationstar assigned the deed of trust to Wilmington Trust on 5/30 of 2014, four days before the trustee sale. Wilmington Trust is an assignee of Nationstar. And by the expressed language of the settlement, the claims against Wilmington Trust related to the assignment or Nationstar's improper conduct regarding the trustee sale were released.

This is a sufficient basis, in and of itself, to dismiss the complaint. But, in the alternative, the Court is going to address the motion to dismiss with regard to the -- and maybe that was an improper phrasing. The Court is finding that the settlement agreement as asserted by Wilmington Trust should be enforced. And the Court will enforce the agreement.

[January 16, 2019 Transcript, at 60:13-62:8.]   The bankruptcy court further held that "because the settlement agreement releases all of Plaintiffs' claims against Wilmington Trust which are based on the trustee's sale, there is no reason to allow the Plaintiffs to amend the complaint or to consider the motion to amend the complaint or to consider the FAC or its allegations…all claims against Wilmington Trust would have been released by virtue of the enforcement of the settlement." [January 16, 2019 Transcript, at 66:23-67:8.]   Finally, the bankruptcy court also analyzed the four claims of the TAC on a substantive basis, and found that the allegations of the TAC did not state a claim for relief against Wilmington Trust.  [January 16, 2019 Transcript, at 62:14 to 66:22.]  The bankruptcy court issued an order dismissing the adversary proceeding on February 1, 2019 [Dkt. 176] and the Conners timely filed a notice of appeal on February 14, 2019 [Dkt. 177.]

## IV.   SUMMARY OF ARGUMENT

The intent of the 2016 settlement agreement must be determined by the Court in order to determine the scope of the releases contained therein.  The parties to the settlement agreement were only MERS, Nationstar, and the Conners.  Wilmington Trust's name is not mentioned in the settlement agreement, despite Wilmington Trust being a defendant in the action and also, by its own counsel's admission, being well aware that the Conners intended to continue their claims against it.  Even accepting Wilmington Trust's argument, both the

11

TAC and FAC allege that the May 30, 2014 assignment to Wilmington Trust was void, and therefore Wilmington Trust cannot be an "assign" under the settlement agreement. The bankruptcy court erred in refusing to consider the Motions to Amend, made both written and oral, as well as the FAC, particularly in light of the Conners' expert's findings of newly discovered facts. The Court must hold that the settlement agreement did not bar claims and remand the matter to consider the FAC.

## V.   **ARGUMENT**

### 1.   **Plaintiffs' Settlement with Nationstar and MERS did not also Release Non-Party Defendants Wilmington Trust and SASCO Trust.**

Wilmington Trust takes a release in a settlement agreement that names only the Conners, MERS, and Nationstar as parties, with the settlement payment coming from Nationstar, and extend it well beyond the agreement to also bar all of the Conners' claims against Wilmington Trust. Wilmington Trust based its argument on it being among the "affiliates, predecessors, and successors" of the parties to the settlement agreement because their names appear as purported assgnees of interests in the Conners' mortgage. The bankruptcy court agreed. But while Wilmington Trust argues and includes a declaration of counsel that there was never a negotiated "carve out" in the agreement, the reverse question should be asked: why weren't they instead parties to the agreement? They were parties to the litigation at the time, and are represented by the same attorneys who represented MERS and Nationstar, yet they were not parties to the agreement nor intended third-party beneficiaries. The Court cannot extend the release beyond the four corners of the agreement to bar claims the parties never intended to release.

The Conners agree that the bankruptcy court and this Court have "inherent authority under federal law to enforce a settlement agreement in the action pending before it." *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987). Under Arizona law, "[c]onstruction and enforcement of settlement agreements, including determinations as to the validity and scope of release terms, are governed by general contract principles." *BMW of N. Am., LLC v. Mini*

Law Office of Christopher Goodman PLC
45 W. Jefferson St., Suite 512
Phoenix, AZ 85003
(602) 253-1000

*Works, LLC*, 166 F. Supp. 3d 976, 981 (D. Ariz. 2010), citing to *Hisel v. Upchurch,* 797 F.Supp. 1509, 1517 (D.Ariz.1992)).   Under Arizona law, an appellate court's interpretation of a release is performed *de novo*. *See ELM Retirement Ctr., LP v. Callaway*, 226 Ariz. 287, 290, ¶ 15 (App. 2010). The goal is to ascertain and enforce the parties' intent by "look[ing] to the plain meaning of the words as viewed in the context of the contract as a whole." *Id.* at 290–91, ¶ 15 (quoting *United Cal. Bank v. Prudential Ins. Co.,* 140 Ariz. 238, 259 (App. 1983). The parties must clearly intend to release claims for unknown injuries. *Dansby v. Buck,* 92 Ariz. 1, 7, 373 P.2d 1 (Ariz.1962). If the parties did not intend to release claims for unknown injuries, a claim for unknown injuries will not be barred. *Cumis Ins. Soc., Inc. v. Merrick Bank Corp.*, 680 F. Supp. 2d 1077, 1094 (D. Ariz. 2010).

The intent of the settlement agreement between the Conners, Nationstar, and MERS (called the "Released Parties" by the settlement agreement) was simply to settle the litigation between them and not as to any other parties to the action, including Wilmington Trust.   Look no further than the release itself, referring only to Nationstar and MERS, despite Wilmington Trust being a named defendant at the time.   There is no mention of Wilmington Trust in the document.   Wilmington Trust's own counsel acknowledges a conversation with the Conners' counsel in which he was informed of the Conners' intent to pursue further claims against Wilmington Trust.   The Notice of Settlement only refers to the Conners, MERS, and Nationstar. Not only is there no reference to Wilmington Trust, Wilmington Trust was aware of the Conners' intent and understanding at the time the agreement was signed.   The bankruptcy court should not have substituted its own intent where the parties clearly manifested their own, and then barred not only the TAC but also the FAC, with the newly-discovered facts and different claims.

Wilmington Trust (and the bankruptcy court) relied upon the release language releasing MERS and Nationstar's "affiliates, predecessors, and assigns." But this language must be read in context of the parties to the settlement agreement, not in the context of the facts of the case.   This language is clearly in reference to other entities that became either Nationstar and MERS, or entities that Nationstar and MERS might become.   The term

Law Office of Christopher Goodman PLC
45 W. Jefferson St., Suite 512
Phoenix, AZ 85003
(602) 253-1000

Law Office of Christopher Goodman PLC
45 W. Jefferson St., Suite 512
Phoenix, AZ 85003
(602) 253-1000

"assigns" is clearly meant within the corporate context, not just because Wilmington Trust received a (void) assignment of a deed of trust from MERS.  For Wilmington Trust to be "affiliates, predecessors, [or] assigns," they would need to be indistinguishable from Nationstar or MERS—they would need to be the entities that Nationstar or MERS *became*, not simply unnamed, unrelated parties with whom Nationstar or MERS did business with. Nor does it refer to "affiliates, predecessors, [or] assigns" in the context of the litigation— it does not specifically refer to the Deed of Trust or other interests in the Property that may have been "assigned" by Nationstar or MERS. To read the release in the manner Wilmington Trust urged below would be to apply the release even beyond this litigation, to any separate entity with whom Nationstar or MERS has done business with, is doing business with, or might do business with, regardless of context.  Under Wilmington Trust's argument, Nationstar or MERS could shield anyone from claims by the Conners simply by assigning them some unspecified right.  That was simply not the intent of the parties in the context of the settlement agreement—if it were, why wouldn't Wilmington Trust be named in the release, or named as a third-party beneficiary, or better yet: have been a party to the settlement?

Wilmington Trust's own declaration of counsel argues that Conners' counsel "was aware during the negotiation of the Settlement Agreement of the implications of the Release Provision as drafted."  [Dkt. 130-1, Exhibit A at ¶ 4.]  Wilmington Trust's counsel bases this testimony on the Conners seeking a carve-out for claims against Wilmington Trust.  Id. But the reverse inference must also be true; the Declaration shows is that Wilmington Trust knew the Conners intended to continue to pursue claims against them at the time the Nationstar and MERS settlement agreement was negotiated—by the same counsel—yet failed to include them as parties nor even name them in the Settlement Agreement.  An express carve-out was not necessary as Wilmington Trust was not a party or mentioned in the release, yet Wilmington Trust now wants to stowaway aboard the settlement agreement.

Under Arizona law, a settlement agreement may afford protection to a purported third-party beneficiary only if (1) "an intention to benefit [the claimant is] indicated in the

contract itself"; (2) "[t]he contemplated benefit [is] both intentional and direct"; and (3) "it

... definitely appear[s] that the parties intend to recognize the third party as the primary party

in interest." *Ansley v. Banner Health Network*, 246 Ariz. 240, ¶ 45, 437 P.3d 899, 913 (App.

2019), citing to *Nahom v. Blue Cross & Blue Shield of Ariz., Inc.*, 180 Ariz. 548, 552, 885

P.2d 1113, 1117 (App. 1994).  Here, there is simply no intent indicated in the settlement

agreement; Wilmington Trust is not a party, not among the "Released Parties," and not once

mentioned in the agreement.  And again, Wilmington Trust had notice of the Conners' intent

at the time the agreement was signed.  Wilmington Trust cannot be a third-party beneficiary

of the settlement agreement.

Finally, a release that releases unknown claims must be specific—and this release is

anything but. It does not mention Wilmington Trust, much less consider unknown future

claims against Wilmington Trust.  Ms. McDonnell's conclusion that MERS, Nationstar, and

Wilmington Trust likely knew that the SASCO Trust did not own the mortgage, while the

Conners did not (and could not).  Not only does that mean the claims in the FAC were not

known at the time of the settlement agreement, it means that the agreement may have been

induced by fraud, thereby clouding the validity of the entire agreement:

> Settlements induced by fraud are set aside…because the defrauded party has not
> freely bargained, but has been induced to settle by affirmative misrepresentations by
> the other party. Enforcing such a settlement would undermine the policy of
> encouraging voluntary settlement of disputes: if litigants cannot assume the
> disclosures and representations of the opposing party are made in good faith, they
> will be reluctant to settle. Assurance of an adversary's good faith is particularly
> critical when parties are attempting to resolve a dispute amicably.

*Matsuura v. Alston & Bird*, 166 F.3d 1006, 1012 (9th Cir. 1999).  The release upon which

Wilmington Trust relies was based upon facts unknown to the Conners yet known to MERS

and Nationstar, facts which would give rise to then-unknown claims.  The release is not

valid to bar any claims, much less unknown claims against non-party Wilmington Trust.

**2.  The bankruptcy court erred in failing to consider the motion to amend and the FAC.**

Law Office of Christopher Goodman PLC
45 W. Jefferson St., Suite 512
Phoenix, AZ 85003
(602) 253-1000

Law Office of Christopher Goodman PLC
45 W. Jefferson St., Suite 512
Phoenix, AZ 85003
(602) 253-1000

The bankruptcy court held that it would not consider the Motion to Amend or FAC because "all claims against Wilmington Trust would have been released by virtue of the enforcement of the settlement." [January 16, 2019 Transcript, at 66:23-67:8.]  But if the release is not valid, the bankruptcy court had to consider the Motion to Amend and FAC. Dismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment.  *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012); *Jewel v. Nat'l Sec. Agency*, 673 F.3d 902, 903 n.3 (9th Cir. 2011).  Such a denial is "strictly" reviewed in light of the strong policy permitting amendment.  *See Plumeau v. School Dist. No. 40*, 130 F.3d 432, 439 (9th Cir. 1997).

The merit or futility of the FAC was not briefed nor argued below.  The allegations were only briefly addressed at hearing, wherein Wilmington Trust acknowledged that SASCO Trust was not the proper trust, but because Wilmington Trust had also, over the years, become trustee of the Lehman XS Trust then there is no difference beyond a *de minimus* mistake in the recorded document.  [January 16, 2019 Transcript, at pp. 11-13.] The difference between trusts, however, is huge to people who want to refinance or modify their loans—as the Conners were attempting to do.  Some trusts are more willing to negotiate than others.  And the difference between trusts is an acknowledgement that not only did Wilmington Trust hold a sale based upon a false assignment, SASCO Trust received an improper benefit—ownership of the Property, and the sale proceeds of the Property.

The FAC asked the bankruptcy court to recognize a claim for wrongful foreclosure. [Dkt. 164 at pp. 26-28.]  The basis of the claim was the Arizona Supreme Court's dicta in 2018's *Zubia v. Shapiro*, which suggested Arizona would recognize the tort of wrongful foreclosure under the right circumstances:

Citing California law, the Ninth Circuit Court of Appeals listed the following elements to assert a wrongful foreclosure claim:

Law Office of Christopher Goodman PLC
45 W. Jefferson St., Suite 512
Phoenix, AZ 85003
(602) 253-1000

(1) [T]he trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering.

*Id.* (emphasis omitted) (quoting *Lona v. Citibank, N.A.*, 202 Cal.App.4th 89, 134 Cal.Rptr.3d 622, 633 (2011)). **Although we do not preclude the possibility that Arizona may recognize a cause of action for wrongful foreclosure in the future, we do not do so here.** As the court of appeals correctly recognized, "Zubia's specific 'wrongful foreclosure' allegations would remain subject to the statutory requisites of A.R.S. § 33-811(C)," and are waived by her failure to seek and obtain the required injunctive relief. *Shapiro*, 2016 WL 5462039, at *3 ¶ 13. Even if we chose to recognize a cause of action for wrongful foreclosure like that in California, it would not apply here, because Shapiro is neither the trustee nor the mortgagee of the property. Moreover, as set forth above, Zubia's claim against Shapiro arises out of the execution and recording of the trustee's deed. As such, her claim is an objection to the validity of the sale and would, therefore, be precluded by § 33-811(C).

243 Ariz. 412, 417–18, ¶¶ 29-30, 408 P.3d 1248, 1253–54 (2018) (emphasis added.)  But in this case, the defendant Wilmington Trust is the trustee.  And also, the preclusion of A.R.S. § 33-811(C) would not apply because the Conners allege the trustee's sale occurred without notice and as a result of misrepresentations:  Mr. Conner was verbally informed by Nationstar that the foreclosure sale would not occur.   This case is the perfect fact scenario for wrongful foreclosure to be recognized in Arizona.   The FAC is not futile, should have been considered by the bankruptcy court, and should be considered upon remand.

## VI.   <u>CONCLUSION</u>

The Conners signed a settlement agreement in 2016 with MERS and Nationstar, based upon facts that MERS and Nationstar likely knew but the Conners certainly did not, and without naming Wilmington Trust as a party, a Released Party, or a third-party beneficiary.  Yet through a tenuous reading of "assign" in the release—and through an assignment which was not valid—Wilmington Trust claims the protection of that release to bar then-unknown claims against a non-party to it.  The bankruptcy court's error in enforcing the release must be rectified.  The Conners respectfully request the Court reverse

the bankruptcy court's ruling and remand this matter, with direction to consider the Fourth Amended Complaint.

DATED this 28th day of June, 2019.

By */s/ Christopher M. Goodman*

Christopher M. Goodman
45 W. Jefferson St., Suite 512
Phoenix, Arizona 85003
chris@goodmanlegal.com
Attorney for Plaintiffs/Appellants

Law Office of Christopher Goodman PLC
45 W. Jefferson St., Suite 512
Phoenix, AZ 85003
(602) 253-1000

18

Law Office of Christopher Goodman PLC
45 W. Jefferson St., Suite 512
Phoenix, AZ 85003
(602) 253-1000

**<u>CERTIFICATIONS</u>**

This brief's length and form complies with the requirements of the Scheduling Order, L.R. 7.1, LRBankr 8010-1 & 8010-2, and Bankruptcy Rule 8015(b).

Certification Required by Local Bankruptcy Rule 8010-1(b): The undersigned certifies that the following parties have an interest in the outcome of this appeal. These representations are made to enable the district judge to evaluate possible disqualification or recusal: Kenneth Conner and Deanna Conner, Plaintiffs.

Certification Required by Local Bankruptcy Rule 8010-1(c): The undersigned certifies that there are no known related cases.

Below-signed counsel certifies that pursuant to Local Rule 8009-2, a paper copy of this Opening Brief as well as a copy of the excerpts of the record were delivered to the District Court on the date below.

CERTIFIED this 28th day of June, 2019.

By */s/ Christopher M. Goodman*

1

## CERTIFICATE OF SERVICE

2

3   I hereby certify that on June 28, 2019, I electronically transmitted the attached document
to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of
4   Electronic Filing to the following CM/ECF registrants:

5   Aaron T. Lloyd
Michael R. Hogue (admitted *pro hac vice*)
6   GREENBERG TRAURIG, LLP
4 Embarcadero Center, Suite 3000
7   San Francisco, CA  94111
8   LloydA@GTLaw.com
HogueM@GTLaw.com
9

10

11   By:   Christopher M. Goodman

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Law Office of Christopher Goodman PLC
45 W. Jefferson St., Suite 512
Phoenix, AZ 85003
(602) 253-1000